CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
9/19/2023
LAURA A. AUSTIN, CLERK
BY: s/ ARLENE LITTLE
      DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | |
|---|---|
| RICHARD BALL AND PATRICIA BALL, | ) ) ) |
| Plaintiffs, | ) ) Civil Action No. 1:23-cv-00006 |
| v. | ) ) By: Hon. Robert S. Ballou ) United States District Judge |
| WELLS FARGO BANK, N.A. | ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION AND ORDER

Defendant, Wells Fargo Bank, N.A., filed a motion to set aside the entry of default against it on April 13, 2023. Dkt. 18. The motion is fully briefed, and I dispense with oral argument as it will not aid in the decisional process. I **GRANT** Wells Fargo's motion and **DENY** the motion for default judgment filed by Richard and Patricia Ball, Dkt. 13, as moot.

The Balls filed this action on March 1, 2023, alleging that they were the victim of a fraud scheme in which several electronic and wire transfers were made from both their Wells Fargo personal accounts, including their home equity line of credit, and a Wells Fargo business account for the American Legion that Richard Ball controls as treasurer. Dkt. 22 at 6–7. The Balls allege that between July 29, 2022, and August 15, 2022, a fraudster convinced them to make three wire transfers in person at a Wells Fargo branch based on the false pretense that their funds were at risk from hackers of the Wells Fargo system. Specifically, the Balls contend that the fraudster coerced them initially to transfer funds from their personal accounts into the American Legion business account. Dkt. 22-1 ¶ 2. Then, the fraudster convinced Patricia Ball to go in person to the Wells Fargo branch in Bristol, Virginia and make three separate wire transfers from the

American Legion account to entities located in China and Hong Kong. Id. at 11. These wire transfers totaled $317,000.

The Balls have alleged that from August 17, 2022, through August 31, 2022, the fraudster accessed their personal accounts and Prime Equity Line and, without their knowledge or consent, made six electronic transfers totaling $115,931.[1] The Balls have attempted to have Wells Fargo reverse the transfers from their various accounts and other charges against the Prime Equity Line, but to no avail. This fraudulent scheme involving both the electronic and wire transfers caused the Balls to lose most of their life savings.

The Complaint asserts federal and state statutory claims and a common law negligence claim against Wells Fargo and seeks compensatory damages and injunctive relief to prevent further charges against their equity line. The Balls served Wells Fargo with the Complaint on March 7, 2023, but Wells Fargo did not file a timely responsive pleading. On the Balls' motion, the Clerk entered default against Wells Fargo.[2] See Fed. R. Civ. P. 55(b)(1). Wells Fargo has moved to set aside that entry of default.

I. **Motion to Set Aside Entry of Default**

A court may "set aside an entry of default for good cause." Fed. R. Civ. Proc. 55(c). The Fourth Circuit has "repeatedly expressed a strong preference that, as a general matter, defaults be avoided and that claims and defenses be disposed of on their merits." Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc., 616 F.3d 413, 417 (4th Cir. 2010). In the context of Rule 55(c), good cause requires the court to weigh (1) whether the moving party has a meritorious

---

[1] The Balls do not allege to whom or where any of the wire or electronic funds transfers were sent, but I infer that these transfers were routed to the fraudster.

[2] I construed the Balls' Mach 31, 2023 motion for default judgment as a "request for the Clerk to make an entry of default against Wells Fargo pursuant to Federal Rule of Civil Procedure 55(a)." Dkt. 11. The Balls have since filed a motion for default judgment against Wells Fargo. Dkt. 13.

defense; (2) whether it acts with reasonable promptness; (3) the personal responsibility of the defaulting party; (4) the prejudice to the nonmoving party; (5) whether the moving party has a history of dilatory action; (6) and the availability of sanctions less drastic. Id. (citing Payne ex rel. Estate of Calzada v. Brake, 439 F.3d 198, 203 (4th Cir. 2006)).

    a. **Whether Wells Fargo has a Meritorious Defense**

To establish a meritorious defense, "the defaulting party must make a presentation or proffer of evidence, which, if believed, would permit either the Court or the jury to find for the defaulting party." Carbon Fuel Co. v. USX Corp., 153 F.3d 719 (Table), 1998 WL 480809, at *4 (4th Cir. 1998). A meritorious defense exists where there is some possibility that the outcome after a full trial will be contrary to the outcome achieved on a default. Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp., 843 F.2d 808, 812 (4th Cir. 1988) (construing Rule 60(b) motion to vacate default judgment). The Balls assert violations of the Electronic Fund Transfer Act ("EFTA") and the Virginia Commercial Code and a claim for common law negligence. Wells Fargo contends that each of the Balls' claims are subject to arbitration under their "agreements with Wells Fargo, including the deposit agreements and the online access agreement, which contain binding arbitration provisions." Dkt. 19 at 6. The online access agreement states that the disputes subject to arbitration include torts as well as statutory, common law, and equitable claims. Id. at 7. The Balls do not address Wells Fargo's arbitration defense in their response. Instead, the Balls attempt to prove the elements of their claims without regard to the applicability of affirmative defenses. Id. But, this misses the mark—the Balls did not address the issue of whether Wells Fargo's defenses have merit. I find that the arbitration defense proffered by Wells Fargo is meritorious because, if accepted, the case would proceed to arbitration rather than trial on the merits.

3

Wells Fargo asserts several additional meritorious defenses. First, Wells Fargo argues that the Electronic Fund Transfer Act does not apply to the to the wire transfers made in person at the Wells Fargo branch. Specifically, Wells Fargo contends that the Balls have not pled two requirements of an EFTA claim, that the transfer (1) is initiated through electronic means and (2) involves a credit or debit to a consumer account. See Walker v. J.P. Morgan Chase Bank, N.A., No. 13-2100, 2013 WL 2151713, at *5 (W.D. Tenn. May 16, 2013).

Wells Fargo argues that the Balls initiated the wire transfers in person at a Wells Fargo branch and that the transfers were made out of business accounts, not consumer accounts. Indeed, the declaration of Patricia Ball shows that the fraudster made electronic transfers from the Balls' personal accounts into the American Legion business accounts. Dkt. 22-1 ¶ 2. The wire transfers then occurred from commercial accounts. Id. This defense, if accepted by the fact finder, may result in a different outcome at trial than at default.

Second, Wells Fargo asserts that it did not violate the Virginia Commercial Code because the Balls expressly authorized the Bank to make the transfers during the in-person visits to the Wells Fargo branch. Wells Fargo argues that it "acted appropriately in relying on the Balls' express instructions[] and was not obligated to separately verify authorized payment orders." Dkt. 19 at 12. An in-person authorization of a wire transfer may well constitute authorization of the transaction under Va. Code § 8.4A-202 for which Wells Fargo would have no responsibility.

Third, in response to the Balls' negligence claim, Wells Fargo argues that it did not owe them a common law duty of care for the fraudster's conduct. The Bank also contends that no special relationship exists between it and the Balls. And even if a duty existed, Wells Fargo asserts that it did not cause any of the harm suffered by the Balls. "Negligence . . . is not actionable unless there is a legal duty, a violation of the duty, and consequent damage." Burns v.

Gagnon, 727 S.E.2d 634, 641 (Va. 2012) (internal quotations omitted). A person generally "does not have a duty to protect another from the conduct of third persons." Id. (citing Kellerman v. McDonough, 684 S.E.2d 786, 793 (Va. 2009)). "There is an exception to the general rule, however, where 'a special relationship exists (1) between the defendant and the third person which imposes a duty upon the defendant to control the third person's conduct, or (2) between the defendant and the plaintiff which gives a right to protection to the plaintiff.'" Id. at 641–42 (quoting Burdette v. Marks, 421 S.E.2d 419, 420 (Va. 1992)). Virginia has not explicitly recognized the existence of a special relationship between a bank and its customers. See, e.g., AG4 Holding, LLC v. Regency Title & Escrow Servs., Inc., 98 Va. Cir. 89, 2018 WL 8618655, at *8 (Va. Cir. Ct. January 24, 2018). If accepted, Defendants' arguments against the existence of a legal duty and of a special relationship could result in a different outcome at trial than at default. Augusta Fiberglass, 843 F.2d at 812.

  As to Wells Fargo's defense to the EFTA claim, the Balls state that the Bank "does not argue [that] these are not consumer accounts, . . . [and that] these are not electronic transfers." Dkt. 22 at 10. However, Wells Fargo explicitly asserts that the Balls made these transfers in person from business accounts. Dkt. 19 at 9. As to the Virginia Commercial Code and negligence claims, the Balls state only that Wells Fargo's procedures were not commercially reasonable under the circumstances and that the Bank owed a duty "to safe keep their customer's funds." Dkt. 22 at 12.

  I find that Wells Fargo has sufficiently alleged facts "which, if believed, would permit either the Court or the jury to find for the defaulting party." Carbon Fuel Co., 1998 WL 480809, at *4. The Balls have not effectively contradicted any of these defenses. I find that the first factor weighs in Wells Fargo's favor.

### b. Whether Wells Fargo Acted with Reasonable Promptness

Wells Fargo acted with reasonable promptness after learning of the entry of default. See Colleton, 616 F.3d at 418. In Colleton, the defendant moved to set aside the entry of default nine days after its counsel learned of the existence of the case. Id. Here, Wells Fargo filed the instant motion nine days after the clerk entered default. Compare Dkt. 12 (filed Apr. 4, 2023) with Dkt. 18 (filed Apr. 13, 2023). The record does not indicate when Wells Fargo learned it was in default, but it acted promptly after learning of the entry of default to satisfy "requisite promptness" required by the Fourth Circuit to set aside a default. Colleton, 616 F.3d at 418.

### c. Personal Responsibility of Defaulting Party

The personal responsibility of Wells Fargo for the default weighs in favor of denying its motion. Wells Fargo admits that it bears responsibility for the default. Dkt. 23 at 7. The Bank states that "through inadvertent internal mistake, the matter was not sent to outside counsel." Dkt. 19 at 17.

### d. Prejudice to the Balls

The Balls will suffer no prejudice if I grant Wells Fargo's motion to set aside the entry of default. "[T]he issue is one of *prejudice to the adversary*, not merely the existence of delay." Colleton, 616 F.3d at 418 (emphasis in original). The Balls argue that they instituted this action "to avoid a default and foreclosure of their home." Dkt. 22 at 14. Wells Fargo states that "there is no foreclosure sale scheduled." Dkt. 19 at 18. The Balls respond that "the Bank's footnote that it has not foreclosed—yet—is of little solace." Dkt. 22 at 15. Yet the Balls continue to make payments as required, albeit "under protest," id. at 14, and Wells Fargo still has not commenced foreclosure proceedings. This case now may proceed on the merits, which will allow the parties

to resolve their dispute after a full development of the facts and circumstances underlying the claims.

### e. History of Dilatory Action

I find no history of dilatory action by Wells Fargo. The Balls filed the complaint on March 1, 2023. Wells Fargo filed the motion to set aside the default less than two months later. Other than default proceedings, nothing on the docket indicates that Wells Fargo has delayed this action's timeline or trajectory, and the Balls present no evidence of dilatory action by Wells Fargo in other lawsuits.

### f. Availability of Less Drastic Sanctions

Less drastic sanctions are available to address Wells Fargo's default. Wells Fargo did not initially address the availability of lesser sanctions, and the Balls concluded that such absence of argument leans this factor against setting aside the entry of default. In vacating an entry of default, the Court may "impose other sanctions against the offending attorney, such as awarding the non-movant's costs and attorney's fees." Augusta Fiberglass, 843 F.2d at 811. I find that imposing attorney's fees and costs incurred by the Balls in seeking to obtain and retain its default is an appropriate and warranted sanction, less drastic than default itself, because the other factors weigh in favor of setting aside the entry of default.

## II. Motion for Temporary Restraining Order

The Balls filed a motion for temporary restraining order before they served Wells Fargo. Dkt. 5. Now that Wells Fargo has appeared, and I have set aside the entry of default, the request for a temporary restraining order is moot.

### III.     Conclusion

I **GRANT** Wells Fargo's motion to set aside the clerk's entry of default and award the Balls the costs and attorney's fees incurred in pursuing the motions for entry of default, to set aside the entry of default, and for default judgment. The motion for default judgment, Dkt. 13, is **DENIED as moot**. I further **DENY without prejudice** the motion for temporary restraining order. An appropriate order shall issue.

Entered:  September 19, 2023

*Robert S. Ballou*

Robert S. Ballou
United States District Judge