IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Abingdon Division

RICHARD BALL and
PATRICIA BALL

          Plaintiffs,

v.                                  Case No. 1:23-cv-00006-RSB-PMS

WELLS FARGO BANK, NATIONAL
ASSOCIATION,

          Defendant.

**WELLS FARGO BANK, N.A.'S MEMORANDUM IN SUPPORT OF ITS
MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

Defendant Wells Fargo Bank, N.A., ("Wells Fargo), by counsel, pursuant to Rule of Civil Procedure 12(b)(6) and Local Civil Rule 11, states as follows in support of its Motion to Dismiss with prejudice (the "Motion") all claims in the Complaint (ECF 1) filed by Plaintiffs Richard Ball and Patricia Ball ("Plaintiffs" or the "Balls").

**INTRODUCTION**

The plaintiffs in this case are elderly residents of Southwest Virginia who apparently fell victim to a fraudulent scheme and allowed a third-party fraudster access to their online banking. Either the Balls, the fraudster, or both, moved money into and out of various accounts, including the Balls' personal and business accounts.  The Balls contend that the fraudster drew the entire amount available on a credit line secured by the Balls' home and that the fraudster also obtained $10,000 from an advance on one of the Balls' credit card accounts.  According to the Complaint, the Balls continued to be duped by the third-party fraudster, including when the Balls initiated

several wire transfers in-person at different Wells Fargo branches. The Balls did not alert Wells Fargo about these alleged facts for months.

While Wells Fargo is sensitive to the fact that fraudulent schemes by third parties sometimes target Wells Fargo's customers like the Balls, Wells Fargo is not liable for the alleged acts of third parties. The Complaint at issue is long on legal contentions and conclusory allegations, but devoid of the sort of specific factual allegations that are required to overcome a motion under Rule 12(b)(6). Further, the admissions the Balls make in their Complaint and in the various briefs and declarations filed in this case make clear that the Balls' claims fail as a matter of law. As explained in more detail below, the Court should grant this Motion and dismiss the Complaint with prejudice.

## ALLEGED FACTUAL BACKGROUND

On March 1, 2023, the Balls commenced this action by filing their Complaint asserting four counts against Wells Fargo based on allegations that the Balls are victims of a fraudulent scheme undertaken by a third-party. Specifically, the Balls allege that they were contacted by a fraudster who falsely stated that the fraudster had an affiliation with Wells Fargo. Complaint at ¶ 11.

According to the Balls, the third-party fraudster obtained access to the Balls' Wells Fargo accounts and made a number of online account transfers between the Balls' personal accounts and business accounts, drew $75,000.00 from the Balls' home equity line of credit, took a $10,000 cash advance on a credit card account, then convinced the Balls to go in person to the local Wells Fargo branch, on several separate dates, to initiate wire transfers totaling $337,000. *Id*., at ¶¶ 12-14, 20, 22. Tellingly, there are no allegations that Wells Fargo participated in the fraudster's scheme, nor are there any allegations that Wells Fargo should have known that the Balls had been defrauded prior to the transfers at issue.

Based on these allegations, the Balls urge in conclusory fashion that Wells Fargo committed some sort of alleged violations of the Electronic Funds Transfer Act, 15 U.S.C. § 1693, *et seq.* ("EFTA") (Count I) and the Uniform Commercial Code, *see* Virginia Code § 8.4-101, *et seq.* ("UCC") (Count II), and common law negligence (Count III). Complaint, ¶ 44. The Balls also assert a conclusory claim for injunctive relief relating to the line of credit that the fraudster accessed (Count IV). *Id*. Unfortunately for the Balls, the scant facts alleged in the Complaint fall short of what is required to state a claim in this Court. And the admissions the Balls make in the Complaint and in the declarations filed in this case defeat their claims against Wells Fargo. Nonetheless, the Balls seek to recover over $400,000—consisting of an equity line draw, a credit card advance, and other funds that the Balls ultimately requested to be wired to foreign accounts—not from the fraudster, but from Wells Fargo.

The unavoidable hurdle the Balls face in this case is that the laws they invoke in their Complaint do not apply to the facts that they have alleged. That hurdle is fatal to their claims against Wells Fargo.

### LEGAL STANDARD: 12(B)(6) MOTION TO DISMISS

When considering a Rule 12(b)(6) motion to dismiss, the Court reviews the sufficiency of the complaint. To survive such a motion, the complaint must allege a plausible claim for relief, i.e., a "short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the… claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (internal quotations marks omitted). The Supreme Court of the United States has explained the application of this standard as follows:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do… Factual allegations

must be enough to raise a right to relief above the speculative level,… on the assumption that all the allegations in the complaint are true (even if doubtful in fact))….

*Twombly*, 550 U.S. at 555 (internal citations and footnote omitted).  *See also* 5 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1216, pp. 235–36 (3d ed. 2004) ("[T]he pleading must contain something more... than... a statement of fact that merely creates a suspicion [of] a legally cognizable right of action.").

*Twombly* marked the "retirement" of the language from *Conley v. Gibson* that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 550 U.S. at 560–61, citing *Conley*, 355 U.S. 41, 45–46 (1957).  Instead, the Supreme Court directed that a mere possibility is insufficient; well-pled allegations must nudge the claim "across the line from conceivable to plausible" to survive a motion to dismiss. *Twombly*, 550 U.S. at 570.  A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), citing *Twombly*, 550 U.S. at 556.

The claim must be supported by "any set of facts consistent with the allegations in the complaint." *Kelley v. United States*, 580 F. Supp. 2d 490, 492 (E.D. Va. 2008).  While the court must construe the complaint in the light most favorable to the plaintiff, read the complaint as a whole, and take facts asserted therein as true, the court need not accept the legal conclusions, inferences, or arguments that are drawn from the facts.  *Id*.

## ARGUMENT

**I.      Plaintiffs Have Not—And Cannot—State A Claim For Alleged Violations Of The Electronic Funds Transfer Act.**

As discussed in Wells Fargo's brief in support of its motion to set aside the Clerk's entry of default, the EFTA is a consumer protection statute that does not apply to business accounts, nor does it apply to all types of transfers involving consumer accounts. *See, e.g.,* ECF 19 at 8-9. "Electronic fund transfers covered by the Act have three components: 1) a transfer of funds, 2) initiation by electronic means, and 3) a debit or credit to a consumer account." *Walker v. JPMorgan Chase Bank, N.A.*, No. 13-2100, 2013 U.S. Dist. LEXIS 70612 at *12, 2013 WL 2151713 (W.D. Tenn. April 25, 2013).

Excluded from coverage under the EFTA are transfers involving business accounts, wire transfers initiated in-person, and transfers other than from deposit or asset accounts. 15 U.S.C. § 1693a(2) and (7); *White v. Chase Bank, USA, N.A.*, No. 5:16-CV-00176, 2017 U.S. Dist. LEXIS 43074 at *13 (E.D.N.C. Mar. 24, 2017) (citing 15 U.S.C. § 1693a (7)); *Walker v. JPMorgan Chase*, 2013 U.S. Dist. LEXIS 70612 at *12.  The EFTA also does not apply where, as here, the Plaintiffs provided the fraudster with the means to access their accounts.  15 U.S.C. § 1693a(12)(A).

This case concerns four different types of banking transactions: (a) in-person wire transfers; (b) a credit card advance; (c) a draw on an open home equity line of credit; and (d) the movement of funds into and out of various consumer and business accounts using an online banking website or application.  The Complaint is unclear as to which of these four types of transactions give rise to the Balls' claims under the EFTA (Count I).  *See generally* Complaint. As explained below, regardless of which category of transactions the Balls intended Count I to address, their EFTA claims are not viable.

### (a) The EFTA Does Not Apply To The Wire Transfers At Issue.

Of the transactions at issue in the Complaint, $317,000 of the claimed damages are for wire transfers that the Balls admit they initiated in person. Complaint, ¶¶ 20-21.

Wire transfers initiated in person, however, are not covered by the protections of the EFTA. *Wachter v. Denever Nat'l Bank*, 751 F. Supp. 906, 908 (D. Colo. 1990) (holding that consumer's complaint about bank's handling of a wire transfer of funds under EFTA must fail, where bank personnel initiated transfer of funds because such use of an electronic device merely to process transaction internally does not constitute "electronic fund transfer" as defined by § 1693a(6)); *Davis v. Wash. Mutual Inc.*, No. 233 F.R.D. 247, 2005 U.S. Dist. LEXIS 28335 at *3 (D. Conn. Nov. 8, 2005) (reasoning that the presence of personal contact with bank personnel who intercede between a consumer and the electronic device used to facilitate a transaction removes that transaction from the scope of the EFTA); *Spain v. Union Trust*, 647 F. Supp. 1496, 1500 (D. Conn. 1987) ("[t]he presence of human contact takes this transaction out of the scope of the Act.").

Wells Fargo raised this argument in its motion to set aside the Clerk's entry of default. ECF 19 at 8-9. Plaintiffs, however, did not refute the argument in their opposition brief. *See generally* ECF 22. Instead, they list only the non-wire transfers as supposedly falling under the EFTA. *Id.* at 7. To the extent the Balls intend to rely on the wire transfers, the Count I claims fail because the Balls admit they initiated each of the wire transfers in person, which is fatal to a claim under the EFTA.

### (b) The EFTA Does Not Apply To Credit Card Advances.

One of the transactions identified in the Complaint is a $10,000 advance on a credit card account. *See* Complaint, ¶ 12 (account ending in 9687, now ending in 2362). By its plain terms, however, the EFTA applies only to deposit accounts, not credit card accounts. 15 U.S.C.

§ 1693a(2) (clarifying that the "accounts" subject to the EFTA are "a demand deposit, savings deposit, or other asset account").

"As several courts have noted, because the EFTA deals with electronic funds transferred directly from bank accounts, it does not apply to credit-based transactions." *DeVivo v. Dainty Rubbish Serv., Inc.*, No. CV196055523S, 2021 BL 142590 at *5 (Conn. Super. Ct. Mar. 11, 2021), citing *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 560 (9th Cir. 2010) (noting the EFTA does not apply to credit based transactions); *Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.*, 111 F. 3d 1322, 1328 (7th Cir. 1997) (noting that the EFTA governs "electronic cash transactions" and is "void of any credit reference or requirement"); *Walker v. JPMorgan Chase*, 2013 U.S. Dist. LEXIS 70612 at *11 ("Importantly, because the EFTA deals with electronic funds transferred directly from bank accounts, it applies to debit cards, but not credit cards"); *In re Vistaprint Corp. Mktg. & Sales Practices Litigation*, No. 4:08-md-1994, 2009 BL 185039, 2009 U.S. Dist. LEXIS 77509, 2009 WL 2884727 (S.D. Tex. 2009) (the EFTA does not apply to credit card transactions); *McNair v. Synapse Group, Inc.*, 2009 BL 139006, 2009 U.S. Dist. LEXIS 54908, 2009 WL 1873582 (D.N.J. 2009) (holding that the EFTA "clearly does not apply to all class members because only a few used debit cards").

To the extent the Balls' EFTA claims include credit card advances including the $10,000 advance on the account ending in 9687, now ending in 2362, as opposed to transactions involving asset accounts, Count I fails as a matter of law.

### (c) The EFTA Does Not Apply To The Credit Line Draw.

The Balls also include in their Count I claim a $75,000.00 draw on an open home equity credit line. *See* Complaint, ¶¶ 12-14. Home equity lines, however, are "explicitly exempted from coverage of the EFTA." *Shames-Yeakel v. Citizens Financial Bank*, 677 F. Supp. 2d 994, 1007

(N.D. Ill. 2009); *see also* Section I(b), *supra*. Because the EFTA applies to asset accounts, not credit lines like the home equity line at issue in the Complaint, all portions of the Balls' Count I claims for draws on their home equity line fail as a matter of law.

      **(d)      The EFTA Does Not Apply To Transfers Involving Business Accounts Or Consumer Accounts Used For Business Purposes.**

At most, only $30,931.00 of the alleged transfers are conceivably covered by the EFTA. *See, e.g.,* Complaint, ¶¶ 12, 14, 22. Of these transactions, the Balls admit that certain involved business accounts, but they fail to specify which transactions involve purely consumer deposit accounts used for consumer purposes. *See, e.g.,* ECF 29, citing ECF 22-1; Complaint at ¶ 12. To fall within the EFTA's coverage, the Balls must show that each transfer involved a credit or debit to a consumer account. 15 U.S.C. § 1693a(2).

As one Court has explained, the EFTA simply does not apply to business accounts:

> [T]he Act clearly states that its primary objective is to provide "individual *consumer* rights" and defines an "account" as a "demand deposit, savings deposit, or other asset account . . . established *primarily for personal, family, or household purposes*." 15 U.S.C. §§ 1693; 1693a (emphasis added). "Corporations or other business entities are not 'consumers' for the purposes of EFTA." *Ironforge.com v. Paychex, Inc*., 747 F. Supp. 2d 384 , 402 (W.D.N.Y. 2010) (citing *Kashanchi v. Texas Commerce Med. Bank, N.A*., 703 F.2d 936 , 939-42 (5th Cir. 1983).

*Binns v. BB&T Bank*, 377 F. Supp. 3d 487, 493 (E.D. Pa. 2019) (rejecting EFTA claims because the account at issue was a business account, not a consumer account); *see also Ballard v. Branch Banking & Trust Co*., No. 11-1327, 284 F.R.D. 9, 12, 2012 U.S. Dist. LEXIS 80109 (D.D.C. Jun. 11, 2012) (citing 1693a(2) as limiting the EFTA's coverage to accounts "established primarily for personal, family, or household purposes"); *Ironforge.com v. Paychex, Inc*., 747 F. Supp. 2d 384, 402 (W.D.N.Y. 2010) (distinguishing two types of accounts under the EFTA); *Shames-Yeakel v. Citizens Fin. Bank*, 677 F. Supp. 2d 994, 1007 (N.D. Ill. 2009) (same); *Regatos v. North Fork*

*Bank*, 257 F. Supp. 2d 632, 638 n. 10 (S.D.N.Y. 2003) (finding that even a non-corporate, individual account is not a 'consumer account' if it is used for business purposes)").

The Balls do not specify which transactions involved the American Legion account or any other business account. To the extent the Balls used their consumer accounts for business purposes, such accounts would not be covered by the EFTA. Wells Fargo is left to speculate as to which of the approximately $30,000 in transfers involved business accounts, as opposed to transactions involving consumer accounts. To the extent the claims involve business accounts or consumer accounts used for business purposes, Count I fails as a matter of law.

    **(e)**     **Because The Balls Provided The Fraudster With The Information Used To Access Their Accounts, They Are Unable To State A Claim For Alleged Violations Of The EFTA.**

The Balls contend that they did not authorize the fraudster to make online banking transfers, and therefore, Wells Fargo should be held liable to the Balls. The Balls are wrong. Under the EFTA:

> [T]he term "unauthorized electronic fund transfer" means an electronic fund transfer from a consumer's account initiated by a person other than the consumer without actual authority to initiate such transfer and from which the consumer receives no benefit, but the term does not include any electronic fund transfer (A) initiated by a person other than the consumer who was furnished with the card, code, or other means of access to such consumer's account by such consumer, unless the consumer has notified the financial institution involved that transfers by such other person are no longer authorized, (B) initiated with fraudulent intent by the consumer or any person acting in concert with the consumer, or (C) which constitutes an error committed by a financial institution.

15 U.S.C. § 1693a(12).

A transaction is not "unauthorized" under the EFTA if, as here, the consumer provided the fraudster "with the card, code, or other means of access to such consumer's account." *Id.*; *see also Aikens v. Portfolio Recovery Assocs.*, No. 17-1132-cv, 716 Fed. Appx. 37, 40, 2017 U.S. App LEXIS 23448 (2d Cir. Nov. 21, 2017) (rejecting consumer's EFTA claim, explaining "a transfer

is not 'unauthorized' under the EFTA when, as here, the consumer herself furnished the 'means of access' to her bank account and never asked her bank to stop the transfers.").

The Complaint alleges that the Balls were contacted by the fraudster and that through "social engineering, the fraudster was able to access the Balls accounts." Complaint, ¶¶ 11-12. In the context of data security, the term "social engineering" has been used for more than a decade to describe a course of conduct where a fraudster "unlawfully attempt[s] to gain access to confidential information using deceitful and fraudulent means." *See, e.g., Cellco Partn. v. Data Find Solutions, Inc.*, No. 06-326, 2007 BL 4956 at *1 (D.N.J. May 22, 2007). The Balls do not allege that the fraudster contacted Wells Fargo; rather, the Balls admit as they must that the Balls were the point of contact for the fraudster. Complaint, ¶ 11.

Thus, the only reasonable inference is that the Balls provided the fraudster with the information needed to access their accounts. *See also* Decl. of Patricia Ball (ECF 22) at ¶ 7 (noting that Wells Fargo denied Plaintiffs' "fraud claim based on our 'participation in [the] scam.'") and exhibits thereto: ECF 22-5 ("Your [fraud] claim was reported to Wells Fargo on October 24, 2022, for an unauthorized advance from your Home Equity Line of Credit ending in []1998. You allowed a 3rd party access to your device…"); ECF 22-6 (same); ECF 22-9 ("you allowed the third party to access your device"); ECF 22-10 at 3 (referring to communications with the Balls counsel and to the contents of a CFPB complaint submitted by the Balls, stating "The consumer alleges she spoke with the fraudster and provided this third-party fraudster with certain requisite identifying information that enabled the fraudster to tamper with her Wells Fargo account(s)").

Because the Balls provided the fraudster with the information the fraudster used to access the Balls accounts, the online transfers at issue in the Complaint fall outside of the ambit of the EFTA. 15 U.S.C. § 1693a(12)(A). Accordingly, Count I should be dismissed with prejudice.

II. **<u>Plaintiffs Themselves Authorized The Wire Transfers At Issue, Which Is Fatal To Their Claims For Alleged UCC Violations</u>.**

In their Count II, the Balls allege in conclusory fashion that Wells Fargo violated the UCC. Complaint at ¶ 35 ("Wells Fargo owed a duty to Plaintiffs to authorize and verify wire transfers under the Uniform Commercial Code" pursuant to Virginia Code § 8.4A-202), ¶¶ 36-37 (contending that Wells Fargo's "procedures were not commercially reasonable under the circumstances of Plaintiffs' wire transfers" and that Wells Fargo breach its UCC duties "by allowing the transfers to be sent while Wells Fargo knew or should have known that the Plaintiffs were being defrauded.").

This Court has provided the analytical framework for UCC claims like those brought by the Plaintiffs in this case:

> UCC Article 4A governs funds transfers, which are a "series of transactions, beginning with the originator's payment order, made for the purpose of making payment to the beneficiary of the order." Va. Code § 8.4A-104. "Whether the bank or customer bears the risk of loss for a fraudulent wire transfer is determined by the interlocking provisions" of Va. Code § 8.4A-202, § 8.4A-203, and § 8.4A-204. *Essilor Int'l Sas v. J.P. Morgan Chase Bank, N.A.*, No. 22-cv-3361, 2023 U.S. Dist. LEXIS 1327, 2023 WL 35176, at *7 (S.D.N.Y. Jan. 4, 2023). A bank may avoid responsibility for fraudulent transfers if the transfer is "authorized" under Va. Code § 8.4A-202(a) or "effective" under Va. Code § 8.4A-202(b). Va. Code § 8.4A-204. As it relates to authorization, Va. Code § 8.4A-202(a) provides that "[a] payment order received by the receiving bank is the authorized order of the person identified as sender if that person authorized the order or is otherwise bound by it under the law of agency."
>
> As it relates to effectiveness, Va. Code § 8.4A-202(b) provides that "[i]f a bank and its customer have agreed that the authenticity of payment orders issued to the bank in the name of the customer as sender will be verified pursuant to a security procedure, a payment order received by the receiving bank is effective as the order of the customer, whether or not authorized, if (i) the security procedure is a commercially reasonable method of providing security against unauthorized payment orders, and (ii) the bank proves that it accepted the payment order in good faith and in compliance with the security procedure and any written agreement or instruction of the customer restricting acceptance of payment orders issued in the name of the customer." Va. Code § 8.4A-202(b).

*Carter v. Wells Fargo Bank, N.A.*, No. 1-23-cv-0007, 2023 U.S. Dist. LEXIS 103397 at *3-5 (W.D. Va. Jun. 14, 2023) ("*Carter I*").

Plaintiffs here have limited their UCC claim brought in Count II to the in-person wire transfers made by Plaintiffs. *See* Complaint, ¶¶ 20-21; Plaintiffs' Opposition to Motion to Set Aside Default (ECF 22) at 8 (confirming that Count II of the Complaint concerns only in-person wire transfers Plaintiffs initiated at a Wells Fargo Branch office: "As a result, the electronic transfers total $115,931 and form the basis for Count I under Regulation E. Notably, the Bank does not claim that the electronic transfers do not qualify under the Regulation. Instead they argue about wire transfers, which are the subjects of Counts II and III. Rather, separately, the fraudster convinced Pat to go to the Wells Fargo branch in Bristol to make wire transfers."); *see also* ECF 22 at 10-12 (describing the allegations supporting Counts II and III and stating: "As further instructed by 'Wells Fargo Fraud Department, Pat Ball went in person to the Bank and requested wire transfers.").

This Court recently held—twice—that UCC claims brought under § 8.4A-202 cannot survive a Rule 12(b)(6) motion to dismiss when, like here, the plaintiff makes the underlying wire transfer in person at a bank branch. *See, e.g., Carter I*; *Carter v. Wells Fargo Bank, N.A.*, No. 1-23-cv-0007, 2023 U.S. Dist. LEXIS 153326 (W.D. Va. Aug. 30, 2023) ("*Carter II*").

The plaintiff in *Carter I* made the same allegations that Plaintiffs make in this case in support of a UCC seeking recovery for fraudulent wire transfers. Specifically, the plaintiff in *Carter I* alleged that the "fraudster also allegedly convinced Carter to make five wire transfers in person at a Wells Fargo branch bank from May to July 2022 . . . Carter alleges that she 'made these transfers under the belief that she was protecting her hard-earned money from hackers of the Wells Fargo system.'" *Carter I* at *2.

This Court granted Wells Fargo's motion to dismiss the UCC claim in *Carter I*, explaining:

> [T]o succeed on her claim for a refund, Carter must show that the wire transfers were neither authorized nor effective. Carter only alleges that the fraudster made electronic wire transfers, convinced Carter to make wire transfers, and took a cash advance from Carter's Wells Fargo Proper American Express Card. Carter does not allege that the transactions were not authorized and does not provide sufficient facts to plausibly establish that Wells Fargo is liable to refund the transferred amounts.

*Carter I,* 2023 U.S. Dist. LEXIS 103397 *6-7.

Despite have an opportunity to replead, the plaintiff in *Carter* failed to cure her pleading deficiencies and the Court again dismissed the UCC claim based on wire transfers that were initiated by the plaintiff at a Wells Fargo branch:

> [T]he allegations in the Second Amended Complaint are clear that Carter authorized the in-person transfers. She went to the bank in person and told the Wells Fargo employees where she wanted her money transferred. Although Carter may not have intended to transfer her money to the fraudster, she authorized the transactions. Unlike in *Precision Computer Services, Inc.*, Carter originated the payment order at Wells Fargo, not the fraudster, and Carter authorized completion of the transaction. While Carter might have been influenced by the fraudster to make the transfer, she ultimately originated the transfer herself and therefore authorized it.
>
> A bank is not responsible for fraudulent transfers if the transfer is "authorized" under Va. Code § 8.4A-202(a) or "effective" under Va. Code § 8.4A-202(b). Carter's authorization of the transfer makes the effectiveness of Well's Fargo's procedures and its employees' actions irrelevant. Va. Code § 8.4A-204. Because Carter authorized the in-person wire transfers, she has failed to state [*12] a claim under §8.4-202. Accordingly, I **GRANT** Wells Fargo's motion to dismiss as it relates to the in-person wire transfers.

*Carter II* at *11-12 (emphasis in original).

This Court dismissed Carter's UCC claim related to in-person wire transfer claims with prejudice, and the same result should apply here. Plaintiffs pled, and confirmed in subsequent pleadings in this litigation, that their Count II only relates to the in-person wire transfers made by Plaintiffs at a Wells Fargo branch. *See, e.g.*, Complaint, ¶¶ 20-21; Motion to Set Aside at 8, 10-

12. Thus, as it relates to its Count II, "[Plaintiffs] originated the payment order at Wells Fargo, not the fraudster, and [Plaintiffs] authorized completion of the transaction.  While [Plaintiffs] might have been influenced by the fraudster to make the transfer, [they] ultimately originate the transfer [themselves] and therefore authorized it." *Carter II* at *11.  Clearly, Plaintiffs authorized the wire transfers at issue and—as contemplated in Va. Code § 8.4A-202(A)— Plaintiffs' Count II claims fail as a matter of law and should be dismissed with prejudice.

### III. Plaintiffs' Count III Claim For Purported Negligence Is Preempted By The UCC, And Fails For The Same Reasons As Count II.

In Count III Plaintiffs bring a cause of action for common law negligence, alleging that "Wells Fargo owed a common law duty to Plaintiffs to authorize and verify wire transfers" and that "Wells Fargo breach its duties to Plaintiffs by allowing the wire transfers to be sent, while Wells Fargo knew or should have known that the Plaintiffs were being defrauded." Complaint, ¶¶ 40-41.  Plaintiffs' negligence claim should be dismissed with prejudice because it is preempted by the UCC and because Wells Fargo does not otherwise owe Plaintiffs a duty of care sounding in negligence.

#### a. Plaintiffs' Negligence Claim is Preempted by the UCC.

In its recent decision *Navy Fed. Credit Union v. Lentz*, 78 Va. App. 250, 2023 Va. App. LEXIS 543 (Aug. 15, 2023), the Virginia Court of Appeals confirmed that negligence claims related to a bank's processing of allegedly fraudulently-induced wire transfers are preempted by the UCC.

In *Lentz*, a fraudster purportedly convinced the plaintiff to make two wire transfers from a Navy Federal Credit Union branch office.  2023 Va. App. LEXIS 543 at *1-2.  In her amended complaint, the plaintiff asserted a negligence claim against the credit union.  *Id.* at *3.  The credit union filed a demurrer arguing that "under the UCC [the credit union] had no duty to prevent the

transfer and that [plaintiff] otherwise failed to plead another common law or statutory duty not superseded by the UCC that [the credit union] had toward [the plaintiff] regarding the wire transfers." *Id.* The trial court overruled the demurrer but certified its decision for an interlocutory appeal to the Court of Appeals. *Id.*

The Virginia Court of Appeals reversed the trial court's decision and held that the demurrer was improperly overruled. In doing so, the Court addressed the interplay between the UCC and claims sounding in negligence that are predicated on the same underlying conduct:

> Article 4A of the UCC was promulgated in 1989 and established for the first time clear, uniform legal rules governing wire transfers in this country. Article 4A has been adopted by state legislatures, including Virginia in 1990. 1990 Va. Acts ch. 9. The UCC rules concerning wire transfers set forth in Article 4A represent "a careful and delicate balancing of [competing] interests and are intended to be the exclusive means of determining the rights, duties and liabilities of the affected parties." Code § 8.4A-102 cmt. As such, "resort to principles of law or equity outside of Article 4A is not appropriate to create rights, duties and liabilities inconsistent with those stated in the Article." *Id.*
>
> Insofar as liability is concerned, the Code is clear: "[l]iability based on acceptance arises only when acceptance occurs as stated in § 8.4A-209, and liability is limited to that provided in this title." Code § 8.4A-212. Furthermore, "a receiving bank. . . does not otherwise have any duty to accept a payment order or, before acceptance, to take any action, or refrain from taking action, with respect to the order except as provided in this title or by express agreement[1]." *Id.* To make it abundantly clear, "the bank owes no duty to any party to the funds transfer except as provided in this title or by express agreement." *Id.*

*Lentz.*, 2023 Va. App. LEXIS 543 at *8-9.

The Virginia Court of Appeals favorably cited *Schlegel v. Bank of Am., N.A.*, 271 Va. 542, 628 S.E.2d. 362 (2006), which found that negligence claims related to unauthorized wire transfers were preempted by the UCC, and then "[held] that the UCC controls and preempts [the credit union's] claims of negligence outside its provisions. [Plaintiff] only alleges a breach of duty

---

[1] Plaintiffs here do not bring a breach of contract claim against Wells Fargo.

regarding the transfer of a wire—something the UCC addresses directly. Anything else in contradiction those explicit provisions is preempted." *Lentz.* at 10.

The same result should obtain here. Plaintiffs' negligence claims only pertain to the wire transfers that Plaintiffs authorized at the Wells Fargo branch office. *See, e.g.*, Complaint, ¶¶ 40-41; ECF 22 at 8, 10-12. The UCC enumerates a bank's duties for the processing of wire transfers and provides the exclusive remedy for any injury sustained by its customer for an allegedly fraudulent transfer. *See, e.g., Schlegel*, 271 Va. at 552-53. Accordingly, Plaintiffs' Count III claims for negligence fail as a matter of law and should be dismissed with prejudice.

    **b. Wells Fargo Does Not Owe Plaintiffs A Heightened Duty of Care, Which Is Required To State A Claim For Negligence.**

Even if Plaintiffs' negligence claim was not preempted by the UCC (which it is), Plaintiffs' claim for negligence still fails because Wells Fargo does not owe Plaintiffs a duty of care sounding in negligence related to the at-issue wire transfers.

As previously briefed in Wells Fargo's Motion to Set Aside the Clerk's Entry of Default (ECF 18, 19 and 23), plaintiffs bringing negligence claims must "show the existence of a legal duty, a breach of the duty, and proximate causation resulting in damage." *Atrium Unit Owners Ass'n v. King*, 266 Va. 288, 293, 585 S.E.2d 545, 548 (2003). It is well-established in Virginia that, absent special circumstances, a party does not have a duty to protect another from the conduct of third persons. *See Didato v. Strehler*, 262 Va. 617, 628-29, 554 S.E.2d 42, 49 (2001); *see also Burns v. Gagnon*, 283 Va. 657, 668-669, 727 S.E.2d 634 (2012) (enumerating those "special relationships" that may allow a plaintiff to claim an exception to the rule that parties generally owe no duty to protect against conduct of third parties); *Alami v. Lincoln Prop. Co.*, 61 F. Supp. 3d. 551, 557 (E.D. Va. 2014) (same).

Here, Plaintiffs do not allege that any special relationship exists between Plaintiffs and Wells Fargo (*see generally* Complaint), and for good reason: the parties' relationship is limited to their banking agreements. There simply is no basis for finding that Wells Fargo owed a heightened duty to Plaintiffs such that Wells Fargo could be liable for the allegedly wrongful acts of third-party fraudsters. But even if Wells Fargo had a special relationship with these Plaintiffs, the negligence claims fail for the additional reason that Plaintiffs allege no facts to support a conclusion that Plaintiffs' alleged harm was caused by Wells Fargo's actions. Indeed, other than the legal conclusions in the Complaint, the allegations concern the actions of the third-party fraudster and not Wells Fargo. Accordingly, Plaintiffs have not—and cannot—state a claim for negligence against Wells Fargo. Count III should be dismissed with prejudice.

### IV. Plaintiffs' Requests for Injunctive Relief Fails as a Matter of Law for the Same Reasons Their Counts I – III Fail.

In their two-paragraph Count IV, Plaintiffs seek "a temporary restraining order, a preliminary injunction, and a permanent injunction prohibiting Wells Fargo from collecting payments on the Prime Equity Line Account or foreclosing upon their home located at 403 Old Abingdon Highway, Bristol, Virginia." Complaint, ¶ 44. In its September 19, 2023 Order (ECF 30), this Court denied Plaintiffs' motion for a temporary restraining order. Further because Plaintiffs' EFTA, UCC, and negligence claims fail as a matter of law, their corresponding requests for a temporary and permanent injunction also fail because Plaintiffs cannot establish likelihood of irreparable harm or that is suffered an irreparable injury. *See Speech First, Inc. v. Sands*, No. 7:21-cv-00203, 2021 U.S. Dist. LEXIS 181057 at * (W.D. Va. Sep. 21, 2021) ("A party seeking a preliminary injunction must establish that (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest."); *O'Sullivan Films, Inc. v. Neaves*, 352 F.

Supp. 3d 617, 628 (W.D. Va. Oct. 18, 2018) (before a permanent injunction is issued "plaintiff must show: (1) that it has suffered an irreparable injury (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.").

The conclusory allegations in the Complaint do not support each element of a claim for injunctive relief. Therefore, Count IV should be dismissed with prejudice. *See Western Star Hosp. Auth., Inc. v. City of Richmond*, No. 3:18-cv-647-JAG, 2019 U.S. Dist LEXIS 134293 at*5 (E.D. Va. Aug. 8, 2019) (injunctive relief properly denied when plaintiff's complaint did not survive Rule 12(b)(6) motion to dismiss).

## CONCLUSION

WHEREFORE, for the foregoing reasons, Wells Fargo Bank, N.A. respectfully requests that the Court grant its Motion, dismiss Plaintiffs' Complaint with prejudice, and award Wells Fargo any such further relief that is just and proper.

Dated: October 3, 2023                    Respectfully submitted,

                                          WELLS FARGO BANK, N.A.

                                          */s/ Alison Ross Ellis*
                                          Alison Ross Ellis (VSB No. 75564)
                                          REED SMITH, LLP
                                          Riverfront Plaza – West Tower
                                          901 E. Byrd Street, Ste. 1900
                                          Richmond, VA 23219
                                          T: (804) 344-3400
                                          F: (804) 344-3410
                                          aellis@reedsmith.com
                                          *Counsel for Defendant Wells Fargo Bank, N. A.*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 3rd day of October, 2023, I have electronically filed the foregoing using the CM/ECF system, which will automatically send e-mail notification of such filing to all counsel of record, including the following:

>Cameron S. Bell
>PENN, STUART & ESKRIDGE
>P.O. Box 2288
>Abingdon, VA 24212
>*Counsel for Plaintiffs Richard Ball and Patricia Ball*

>/s/ *Alison Ross Ellis*
>Alison Ross Ellis (VSB No. 75564)
>REED SMITH, LLP
>Riverfront Plaza – West Tower
>901 E. Byrd Street, Ste. 1900
>Richmond, VA 23219
>T: (804) 344-3400
>F: (804) 344-3410
>aellis@reedsmith.com
>*Counsel for Defendant Wells Fargo Bank, N.A.*